JOSEPH E.. FOXCROFT, PLAINTIFF IN ERROR, v. DAVID MALLETT, DE-
FENDANT.

· Where a township of land was granted to a college upon condition (amongst oth-
· ers) that the grantees should give security that they would plaće a certain num-
ber of settlers on the land within a certain time, the duty of placing settlers re-
mained as a permanent charge upon the land, unless counteracted by express
agreements and special provisions between some of the subsequent grantees.

· The second grantee, in his deed to a third grantee for an undivided portion of the
land, having " excepted and reserved certain lots," and conveyed the rest, " sub-
ject to the condition that the third grantee should perform his part of the settling
duties in proportion," and also, " that from the portion conveyed a part should
be taken, in the proportion which the part conveyed bore to the whole township,"
by this language limited the extent and nature of the grant.

When this third grantee mortgaged his interest, the portion of land destined for
settlers did not pass by the mortgage ; but when this portion was afterwards lo-
cated according to law, a title accrued to the settler, paramount to a title held
under a foreclosure of the mortgage.

Whether the clause in the original grant be construed as an exception or reserva-
tion, or as a condition, the result would be the same. The title to the settlers'
lots did not vest in any of the persons through whom the grant passed, but re-
mained as a charge upon the land, until the intentions of the legislature were
carried out by an actual settlement.

By appropriating these lots to settlers, no part of the security provided by the mort-
gage is withdrawn, because the mortgage itself must have contemplated such an
arrangement.

The mortgage being executed on the same day that the mortgagor received his title,.
and containing a reference to the deed to the mortgagor, both deeds may be con-
sidered parts of one transaction, and be construed together.

A decision of a State court upon the construction of a deed, as to matters and lan-
guage belonging to the common law and not to any local statute, although enti-
titled to high respect, is not conclusive upon this court.

THIS case was brought up, by writ of error, from the Circuit.
Court of the United States for the District of Maine.

It was a writ of right sued out by David Mallett, an inhabitant.
of New Hampshire, demanding two lots of land situated in Lee,
in the county of Penobscot, and State of Maine, being lots num-
bered eleven in the fourth range, and eleven in the fifth range,
containing two hundred acres, more or less, in said town of Lee.

· As an illustration of the chain of title, on the part of both plain-
tiff and defendant, the reporter has prepared the two following dia-
grams, showing the title as exhibited upon the trial by the plaintiff
and defendant respectively.

MALLETT'S (PLAINTIFF BELOW AND DEFENDANT IN ERROR) TITLE.

FOXCROFT'S (PLAINTIFF IN ERROR) TITLE.

On the 19th of February, 1805, the State of Massachusetts passed the following resolution.

## No. 1.

" *Resolve on the Petition of the President and Trustees of Williams College, granting them a Township of Land, with a Proviso.  February 19, 1805.*

" The committee of both Houses, to whom was referred the petition of the President and Trustees of Williams College, praying the aid of government to enable them to build a chapel for the performance of divine service, and for keeping the College library and apparatus, having examined the origin, rise, and progress of that seminary, from its institution to the present time, together with the aid heretofore afforded by the government, and the existing state of its funds, beg leave to observe, that the funds granted by the original donor and the government have, in the opinion of the committee, been judiciously applied to the object of the institution, and with success exceeding the most sanguine expectations, and that the present state of the College affords a reasonable and pleasing expectation of its future extensive benefits to society, and that a chapel, for the purposes above mentioned, would effectually promote the same ; and as the encouragement and grants of the government to that College have not been equal to those made to other seminaries in the Commonwealth, the committee ask leave to report the following resolve, which is submitted by Ezra Starkweather, per order.

" *Resolved,* For reasons set forth in the petition, that there be, and hereby is, granted one township of land, of the contents of six miles square, to be laid out and assigned from any of the unappropriated lands belonging to the Commonwealth in the District of Maine, excepting the ten townships lately purchased of the Penobscot Indians, the same to be vested in the President and Trustees of Williams College and their successors for ever, for the use, benefit, and purpose of supporting the said College, to be by them holden in their corporate capacity, with full power and authority to settle, divide, and manage the same, or to sell, convey, and dispose thereof, in such way and manner as shall best promote the interest and welfare of said College ; the same to be laid out under the direction of the committee for the sale of Eastern lands, at the expense of the said corporation, and a plan thereof to be lodged in the secretary's office.

" *Provided,* The trustees of said College, or their assigns, shall cause to be settled fifteen families in said township within twelve years from the passing of this resolve ; and also, that there be reserved in said township three lots, of three hundred and twenty acres each, for the following uses ; namely, one lot for the first

settled minister ; one lot for the use of the ministry ; and one lot for the use of schools, in said township."

And on the 27th of January, 1820, the following:

### No. 2.

" *Resolved*, That the commissioners of the land-office be, and they hereby are, authorized and empowered to satisfy a grant of a township of land of the contents of six miles square, made by a resolve of the nineteenth of February, eighteen hundred and five, to the President and Trustees of Williams College, by locating the same, and conveying the said corporation township number three, in the second        north of Bingham's Penobscot purchase, the same being numbered four, as surveyed by Alexander Greenwood. *Provided*, said grantees, or their assigns, shall first pay to said commissioners the expense of surveying and locating said township, and give security to the Commonwealth in a manner satisfactory to said commissioners, that they will, within one year from the passing of this resolve, cut out a road, two rods wide, from the termination of the road commonly called the St. John's Road (which has been opened, under the direction of said commissioners, from Penobscot River into township number two in the first range) to said township to be conveyed, and clear a travelled path therein of one rod in width ; and that within two years they will clear a like road through said township, so to be conveyed, and make the necessary causeways and bridges thereon, all in a manner to be directed by said commissioners ; and within three years will place on said township thirty families as settlers, of the description named in the act for promoting the sale and settlement of the public lands in the District of Maine ; also reserving in said township the usual public lots."

On the 15th of February, 1820, the commissioners executed a deed to the College, in which they recite the preceding resolution and proceed thus : —

" Now, therefore, know ye, that we, the undersigned, whose seals are hereunto affixed, appointed commissioners for promoting the sale and settlement of the public lands in the District of Maine, conformable to an act passed the fifteenth day of February, eighteen hundred and sixteen, by virtue of powers vested in the undersigned, and pursuant to the resolve of the twenty-seventh day of January, eighteen hundred and twenty, herein recited, do by these presents, in behalf of the Commonwealth aforesaid, assign, relinquish, and quitclaim to the President and Trustees of William's College, and their successors for ever, one township of land, of the contents of six miles square, lying in the county of Penobscot, as the same was surveyed by Alexander Greenwood, in the year of

Foxcroft v. Mallett.

our Lord one thousand eight hundred and eleven, bounded and described as follows ; namely, southerly on township number three, in the first range ; westerly on located land ; northerly on unlocated land ; and easterly on township numbered four, in the second range, containing twenty-three thousand and forty acres ; conditioned, however, that the said grantees, their successors and assigns, shall lay out three lots of three hundred and twenty acres each, for public uses.   One lot for the first settled minister, his heirs and assigns ; one lot for the use of the ministry ; and one lot for the use of schools, in said township.

" To have and to hold the aforegranted premises to the President and Trustees of Williams College, their successors and assigns, on the conditions aforesaid, for ever.   In witness whereof, we have hereunto set our hands and affixed our seals, this fifteenth day of February, in the year of our Lord one thousand eight hundred and twenty.

EDWARD H. ROBBINS.  [L. s.]
LATHROP LEWIS.          [L. s.]
JOSEPH LEE.               [L. s.]

" Signed, sealed, and delivered in presence of
     SAM'L REDDINGTON.
     GEORGE W. COFFIN."

On the same day, namely, the 15th of February, 1820, the treasurer of the College executed the following deed to Nathaniel Ingersoll.

" Know all men by these presents, that I, Daniel Noble, of Williamstown, in the county of Berkshire and Commonwealth of Massachusetts, esquire, treasurer of the corporation of Williams College, for and in consideration of the sum of four thousand six hundred dollars, secured to be paid to said corporation by Nathaniel Ingersoll, of the town of New Gloucester, in the county of Cumberland and Commonwealth aforesaid, have given, granted, sold, and conveyed, and by these presents, in behalf of said corporation, do give, grant, sell, and convey unto the said Nathaniel Ingersoll, a township of land lying in the county of Penobscot and Commonwealth aforesaid, and containing twenty-three thousand and forty acres, as the same was surveyed by Alexander Greenwood, in the year one thousand eight hundred and eleven, bounded and described as follows ; namely, southerly on township number three in the first range ; westerly by unlocated land ; northerly by unlocated land ; and easterly on township number four in the second range, the same being township number three in the second range of townships north of Bingham's Penobscot purchase, and numbered four by said Greenwood ; conditioned, however, that the said Ingersoll, his heirs and assigns, shall lay out three lots of three hundred and twenty acres each, for public uses ; one lot for

the first settled minister, his heirs and assigns ; one lot for the use of the ministry ; and one lot for the use of schools in said township. To have and to hold the aforegranted premises to the said Nathaniel Ingersoll, his heirs and assigns for ever, on the condition aforesaid ; and the said Daniel Noble, treasurer of the corporation of Williams College, covenants with the said Nathaniel Ingersoll, that he has good right to sell and convey the premises aforesaid, and that said corporation shall warrant and defend the same, on the condition aforesaid, to the said Ingersoll, his heirs and assigns for ever, against the lawful claims and demands of all persons.

" In witness whereof I have hereunto set my hand and affixed the seal of the corporation of Williams College, this fifteenth day of February, in the year of our Lord one thousand eight hundred and twenty.

                              DANIEL NOBLE.  [L. s.]"

" Signed, sealed, and delivered in presence of us, — the word ' each ' being first interlined in the twenty-sixth line of the first page.
        LATHROP LEWIS.
        GEORGE W. COFFIN."

" *Suffolk ss.*                    *Boston, 16th February,* 1820.
" Then personally appeared the honorable Daniel Noble, in his said capacity as treasurer of said corporation, and freely and voluntarily subscribed his name and affixed the seal of said corporation as the act and deed of said corporation, and delivered the same before me.

          GEORGE W. COFFIN, *Justice of the Peace.*"

This last deed, although executed in 1820, was not delivered to Ingersoll until June 5th, 1827, being deposited, in the mean time, with the agent of the College, as an escrow.

On the same day, namely, the 15th of February, 1820, Ingersoll conveyed to William Hodgkins, one undivided forty-sixth part of the township, saving and reserving out of said forty-sixth part, so called, one forty-sixth part of the lands reserved in the grant of said township to the President and Trustees of Williams College, for public uses.

On the 17th of March, 1820, Ingersoll, with eight other persons, executed to the treasurer of Massachusetts a bond, in the penalty of three thousand dollars, with the following condition, namely : —

" The condition of the above obligation is such, that whereas the above Nathaniel Ingersoll, and others above named, have become the assignees of a township of land, being numbered three, in the second range of townships north of Bingham's Penobscot purchase, the same being numbered four, as surveyed by Alexander Greenwood, and the same that was conveyed by the commissioners of the land-office, the fifteenth day of February last, to the President and Trustees of Williams College, conformable to a resolve,

passed the twenty-seventh day of January, eighteen hundred and twenty, and as such have paid the expense of surveying and locating said township.    If, therefore, the said Nathaniel Ingersoll, Roger Merrill, Jonathan Page, Thomas Merriman, Thomas Skofield, Jacob Randall, Simeon Tryon, Jacob Davis, and Hugh Nevens shall, within one year from the passing of said resolve, cut out a road, two rods wide, from the termination of the road commonly called the St. John's Road (which has been opened, under the direction of said commissioners, from Penobscot River into township number two in the first range) to said township, and clear a travelled path therein of one rod in width ; and that within two years they will clear a like road through said township, and make the necessary causeways and bridges thereon, all in a manner to be directed by said commissioners, and within three years will place on said township thirty families, as settlers, of the description named in the act for promoting the sale and settlement of the public lands in the District of Maine, then this obligation to be null and void, otherwise to remain in full force."

On the 16th of May, 1821, Ingersoll conveyed to Eleazer Greeley one thousand acres of land, " in common and undivided, with the reservation of the public lands."

On the 7th of May, 1825, Hodgkins reconveyed the same land which Ingersoll had deeded to him to Ingersoll, and Samuel T. Mallett.

On the 5th of June, 1827, three several deeds were executed, and in order to enable himself to execute one of them, Ingersoll received the deed which had so long been kept as an escrow by the College, namely, the deed of the 15th of February, 1820, by which the College conveyed the entire township to Ingersoll.    Being now in possession of his deed,

1. Ingersoll conveyed to Samuel T. Mallett " six thousand acres of land, in common and undivided, in the township of land lying in the county of Penobscot, as the same township was surveyed by Alexander Greenwood, Esq., in the year 1811, the same being township numbered three in the second range of townships north of the Bingham Penobscot purchase, and numbered four by said Greenwood, being the same conveyed to me by the President and Trustees of Williams College, as described in their deed, dated February 15th, 1820, and this day delivered to me, reference thereto being had ; excepting and reserving the lots marked as settlers' lots on a plan of said town made by John Webber, and excepting also the lot on which I have improved, which are not to be subjected to a draft ; subject, however, to the condition that the said Mallett shall perform his part of the settling duties in proportion to the land conveyed, and also that from said six thousand acres a part of the public lands reserved shall be taken in proportion as said six thousand acres bears to the whole township."

2. Greeley conveyed to the same Samuel T. Mallett "all my right, title, and interest in and to one thousand acres of land, in No. 4, second range, north of Bingham's purchase, and east side of Penobscot River, in common and undivided, with the reservation of the public lands, being the same I purchased of Nathaniel Ingersoll, as per deed dated May 16th, 1821."

3. Mallett, being in possession of these two branches of the entire title, mortgaged one of them (namely, the one which he had just received from Ingersoll) to the College, to secure the payment of certain notes to the College. As the whole case turned upon the construction of this mortgage, and what passed under it, the whole paper is inserted.

"Know all men by these presents, that I, Samuel T. Mallett, of Litchfield, in the county of Lincoln, yeoman, in consideration of the sum of three thousand dollars paid by the President and Trustees of Williams College (the receipt whereof I do hereby acknowledge), do hereby give, grant, bargain, sell, and convey unto the said President and Trustees of Williams College, and their successors, for ever, six thousand acres of land, in common and undivided, in the township of land lying in the county of Penobscot, as the same township was surveyed by Alexander Greenwood, in the year 1811, the same being township numbered three in the second range north of the Bingham Penobscot purchase, and numbered four by said Greenwood ; being the same this day conveyed to me by Nathaniel Ingersoll, as by his deed, reference thereto being had.

"To have and to hold the aforegranted and bargained premises, with all the privileges and appurtenances thereof, to the said President and Trustees, their successors and assigns, to their use and behoof for ever. And I do covenant with the said President and Trustees, their successors and assigns, that I am lawfully seized in fee of the premises ; that they are free of all encumbrances ; that I have good right to sell and convey the same to the said President and Trustees, to hold as aforesaid ; and that I will warrant and defend the same to the said President and Trustees, their successors and assigns, for ever, against the lawful claims and demands of all persons.

"Provided, nevertheless, that if the said Mallett, his heirs, executors, or administrators, pay to the said President and Trustees, their successors, heirs, executors, administrators, or assigns, the sum of three thousand dollars, in equal annual payments, in one, two, three, and four years, with interest, annually, on the whole, from the 1st day of January last past, as by notes dated May 28th, 1827 ; then this deed, as also four certain notes of the above date, given by the said Mallett and Jonathan Hodgman, to the said President and Trustees, to pay the sum and interest at the times aforesaid, shall both be void ; otherwise, shall remain in full force.

" In witness whereof I, the said Mallett, have hereunto set my hand and seal, this 5th day of June, in the year of our Lord one thousand eight hundred and twenty-seven.

SAMUEL T. MALLETT. [L. s.]

" Signed, sealed, and delivered in presence of
NATH'L INGERSOLL."

On the 6th of February, 1828, Ingersoll conveyed to Mallett a certain piece or parcel of land situated in No. 3, in the county of Penobscot, being one half of lot numbered eleven, in the fifth range, in common and undivided, being one of the settlers' lots, the half of said lot containing fifty acres ; said land being north of Bingham's Penobscot purchase in the county of Penobscot.

On the 16th of April, 1828, a meeting of the proprietors was called, " To see what measures the said proprietors will adopt to divide and apportion said lands, and to act thereon as may be judged proper." After sundry proceedings and adjournments, the meeting voted, on the 1st of July, " That the proprietors will proceed to divide and apportion the lands reserved to be set off as public lots," and a committee was appointed to perform this duty. The report of the committee was adopted by the meeting. After setting off nine hundred and sixty acres as " ministerial lands," and some other proceedings, it was voted, " To assign and set off twenty-seven lots as settlers' lots ; namely, to Nathaniel Ingersoll, thirteen lots, which he has sold to settlers, and on which improvements have been made, as so much towards his share. Also, to Samuel T. Mallett, fourteen lots, being lots which he has sold to settlers, as so much towards his share in said lands."

Amongst the lots thus assigned to Mallett were lots No. 11 in range 4, and No. 11 in range 5, being the two lots in controversy in the present case. The meeting then proceeded to make division by lot of the lands not reserved for public lands ; and not reserved to be holden as tenants in common among the several proprietors, according to their several rights in said township ; and not assigned to Nathaniel Ingersoll and Samuel T. Mallett.

On the 12th of August, 1829, Samuel Mallett conveyed to David Mallett, the plaintiff below, the two lots in question.

On the 26th of July, 1832, the notes to the College not being paid by Samuel Mallett, the College brought an action called a " plea of land," in the nature of an ejectment, to recover sixty-eight lots of one hundred acres each, which had been drawn to the share of said Mallett as above set forth, the action being for " six thousand acres in common and undivided."

At June term, 1837, the case came on for trial, and was left to a jury, who found a verdict for the plaintiffs, and the judgment of the court was, " that the said President and Trustees of Williams College recover against the said Samuel T. Mallett their title and

possession of and in the demanded premises, and that a writ of possession issue accordingly, unless the defendant, his heirs, executors, administrators, and assigns [pay] the sum of five thousand three hundred and five dollars and seventy-five cents, and interest, within two months, together with costs of suit, taxed at ninety-five dollars and thirteen cents."

Upon this judgment a writ of *habere facias possessionem* was issued, on the 20th of June, 1839.

Under this recovery, Foxcroft, the plaintiff in error and defendant below, claimed. It is unnecessary to set out the mesne conveyances and partition by which his title to the lots in question was established.

The suit brought by David Mallett in the Circuit Court was a writ of right, which came on for trial in October, 1843, when the jury found a verdict for the plaintiff. The following bill of exceptions to a ruling of the court was taken on the part of Foxcroft, the defendant.

" DAVID MALLETT *v.* JOSEPH E. FOXCROFT.

" Be it remembered, that the aforesaid Mallett having, on the twenty-ninth day of August, in the year of our Lord one thousand eight hundred and thirty-nine, brought his writ of right, returnable to said Circuit Court, to be holden on the first day of October, then next, wherein the said David demands against the said Joseph two certain lots of land, with the appurtenances, situate in Lee, in said Maine District, being lots numbered eleven in the fourth range, and eleven in the fifth range, in said town of Lee ; which two certain lots the said David claims to be the right and inheritance of him, the said David, and of which he alleges that he was seized in his demesne as of fee and right, within twenty years, and ought now to be in quiet possession thereof, but which the said Joseph unjustly withholds from him. And the said writ having been duly served and returned, when and where the same was returnable, and the action having been duly entered and continued, from term to term, to this term ; and the said Joseph having appeared and pleaded, and thereby defended the right of the said David and his seizin, and put himself thereof on the country, and prayed recognition to be made whether he, the said Joseph, had not greater right to hold the tenements aforesaid, to him and his heirs, as tenants thereof, as he now holds the same, or the said David, as he has demanded the same in and by his said writ and declaration ; and the plaintiff having joined the issue tendered, and the jury having been duly impanelled to try the same, the plaintiff, to prove the issue on his part, offered in evidence a deed from the Commonwealth of Massachusetts to Williams College, dated February 15th, 1820, of a certain township of land, of which the demanded premises are a part, a copy of which deed is hereunto annexed,

marked A., makes part of this bill of exceptions.   He next offered in evidence a deed from the same Williams College to Nathaniel Ingersoll, dated the same 15th day of February, 1820, of the same township, but which said deed was not delivered until June 5th, 1827, the deed having been in the mean time deposited as an escrow with the agent of the College.   He also offered in evidence a deed from the said Nathaniel Ingersoll to William Hodgkins, dated 15th February, 1820.   Also, a deed from said Nathaniel Ingersoll to Eleazer Greeley, dated May 16th, 1821.   Also, a deed [from] said William Hodgkins to said Nathaniel Ingersoll and Samuel T. Mallett, dated May 7th, 1825.   Also a deed from said E. Greeley to same Samuel T. Mallett, dated June 5th, 1827.   Also a deed [from] said Nathaniel Ingersoll to said Samuel T. Mallett, February 6th, 1828; copies of all which deeds are hereunto annexed and marked B, C, D, E, F, and G, make a part of this bill of exceptions.

   " He then introduced the records of a meeting of the proprietors of the township, called and organized according to the laws of the State of Maine, for the purpose of making a partition of the lands in the township among the several owners, &c.   The meeting being holden on the first day of July, 1828, by adjournment from the 16th April, 1828.   Portions of the record, so far as they relate to the matter in controversy, were read ; a copy of which, marked B, is hereunto annexed, and makes a part of this bill of exceptions. He also offered in evidence and read to the jury, a deed from said Samuel T. Mallett to David Mallett, the plaintiff, dated August the 12th, 1829, purporting to convey to the said David two certain lots, being the demanded premises, a copy of which is hereunto annexed, marked H, and makes a part of this bill of exceptions.   And the defendant, to maintain the issue on his part, offered in evidence, and read to the jury, a resolve of the Commonwealth of Massachusetts, dated the 19th day of February, 1805, and another resolve of the same Commonwealth, dated the 27th day of January, 1820 ; copies of which said resolves are hereunto annexed, and marked No. 1 and No. 2, and make part of this bill of exceptions.   Also the deed from the same Commonwealth to Williams College, and the deed from said College to said Nathaniel Ingersoll, herein before referred to, marked A and B, having been offered in evidence by the plaintiff.   Also a bond from the said Nathaniel Ingersoll and others to the said Commonwealth, dated March 17th, 1820, a copy of which is hereunto annexed as a part of this bill of exceptions, marked No. 3.   Also a deed from Nathaniel Ingersoll aforesaid, dated 5th June, 1827, to Samuel T. Mallett aforesaid.   Also a deed of mortgage from Samuel T. Mallett aforesaid to said Williams College, dated the same 5th June, 1827 ; copies of both which deeds are hereunto annexed, marked No. 4 and 5, and make a part of this bill of exceptions.   Also the record of the writ and judgment for the foreclosure of said mortgage; by

the said Williams College, against the said Samuel T. Mallett, a copy of which is hereunto annexed, marked No. 6, and makes a part of this bill of exceptions. Also a deed from said Williams College to John Webber, dated May the 11th, 1835, assigning said mortgaged premises to him. Also a deed from John Webber to said defendant, dated the 19th June, 1835, conveying one undivided half of said mortgaged premises to him, said defendant ; copies of which two last-mentioned deeds are annexed, and make a part of this bill of exceptions, marked No. 7 and 8. Also the proceedings in partition, instituted by the said Webber and Foxcroft, and the record of the assignment and judgment thereon, in the Supreme Judicial Court of the State of Maine, being the highest court of record in said State, a copy of which proceedings and record is annexed, marked No. 9, makes a part of this bill of exceptions. Also a deed from said John Webber to said defendant, dated November the 4th, 1836, of the residue or remaining moiety of the mortgaged premises conveyed to said Webber by said Williams College ; a copy of which deed is marked No. 10, and annexed hereto, and makes a part of this bill of exceptions.

" It was stated and admitted as a part of this cause, that at the time said proprietors' meeting was held, Samuel Fessenden, the agent of Williams College, resided in Portland, the place of said meeting, but was not present at said meeting.

" Upon this evidence, the honorable justice who presided at said trial ruled that the mortgage deed offered in evidence by the defendant, given to the said trustees of Williams College, dated the fifth day of June, 1827, marked 5, does not comprehend and cover the two lots, 11th in the 4th range, and 11th in the 5th range, being the premises demanded. And the said honorable justice did then and there declare and deliver his opinion aforesaid, that the mortgage deed aforesaid does not comprehend and cover the two lots, namely, No. 11 in the 4th range, and No. 11 in the 5th range, being the premises demanded, to the jury aforesaid, and with that direction left the said cause to the jury, and the said jury then and there gave and returned the following verdict, to wit : — ' The jury find that the said David Mallett hath greater right to hold the lands and tenements described in his writ in said suit, as he has demanded the same, than said Foxcroft, the tenant, has to hold the same.' Whereupon the counsel of the defendant did, then and there, on behalf of the said defendant, except to the aforesaid opinion of said honorable justice, and insisted that said mortgage deed did comprehend and cover the said two lots No. 11 in the 4th range, and No. 11 in the 5th range, being the premises demanded. And inasmuch as the said several matters so produced and given in evidence on the part of said plaintiff and defendant, and by their counsel aforesaid insisted upon, do not appear by the record of the verdict aforesaid, the said counsel for said de-

fendant did then and there propose their aforesaid exception to the opinion of the said justice, and requested said justice to put his seal to this bill of exceptions, containing the several matters so produced and given in evidence, on the part of said defendant, as aforesaid ; and thereupon the said honorable justice, at the request of said counsel of said defendant, did put his seal to this bill of exceptions, on the eighth day of October, in the year of our Lord one thousand eight hundred and forty-three.

[L. s.]                                          JOSEPH STORY,
                          *One of the Justices of the Supreme Court of*
                                            *the United States.*

" We, the undersigned, certify, that this bill of exceptions is satisfactory to us.

FESSENDEN & DEBLOIS & FESSENDEN,
                                          *For the defendant.*
WILLIS & FESSENDEN,
                                          *For plaintiff.*"

Upon this bill of exceptions, the case came up to this court.

It was submitted upon printed arguments, by *Mr. Webster,* for the plaintiff in error, and *Mr. Evans,* for the defendant.

The points made by *Mr. Webster* were the following : —

1. By the resolve of January 27th, 1820, and the deed of the 15th of February, 1820, A, the fee in the township passed to the President and Trustees of Williams College, unencumbered by any condition as to settlers to be placed on said township, — the settling duties being secured by bond.

2. By the deed B, Noble to Ingersoll, the fee in the township passed to Ingersoll, unencumbered by any condition as to the duty of putting on, as settlers, thirty families.

3. By the deed No. 4, Ingersoll to Mallett, the fee in six thousand acres in said township, in common and undivided, of a certain portion of it, passed to Mallett, by the delivery of the deed, subject to the condition subsequent, to perform his part of the settling duties in proportion to the land conveyed.

4. That the settling duties to be performed by Mallett could not mean that he should, within three years from the making of the grant, put settlers on said township, because, when the deed was made to Mallett, these three years had elapsed.

5. Mallett was not bound by the condition to appropriate any part of the six thousand acres to settlers ; but it would be a good performance of the settling duty incumbent on him according to his deed, had he, Mallett, within a reasonable time after the division of the township and the assignment of his share to him, placed settlers on any part of said township which he, Mallett, might acquire by purchase.

EE *

6. It would be a good performance of the condition, to pay his proportion of the bond made to secure the settlement of thirty families on said township.

7. That it did not and does not appear that the settling duties secured by the condition in the deed from Ingersoll to Mallett had not been performed.

8. There was no evidence offered to show that Ingersoll or his heirs ever entered for a breach of any condition in that deed, and therefore that the fee remained in Mallett or in his grantees, the President and Trustees of Williams College.

9. Ingersoll or his heirs were the only persons who could enter for a breach of the condition, and, as they did not, the presumption is that the condition was not broken.

10. By the deed in mortgage, Mallett to the President and Trustees of Williams College, No. 5, the fee in mortgage of the whole six thousand acres, in common and undivided, in the residue of the whole township, passed to the grantees simultaneously with the fee which Mallett took from Ingersoll.

11. That the condition assumed by Mallett to perform settling duties, whatever might be the import of that condition as between Mallett and the President and Trustees of Williams College, and the obligation to fulfil that condition, was not transferred from Mallett to the President and Trustees of the College by Mallett's deed of mortgage to them.

12. By the division made by the proprietors, and the assignment to each of his share, sixty-eight lots were assigned to Mallett, and he became seized thereof in fee and in severalty, as well those assigned by direct vote as those assigned by draft, according to a vote.

13. That, by operation of law, when such division was made, the President and Trustees of Williams College became seized, as tenants in common with Mallett, by operation of the mortgage deed to the whole sixty-eight lots in proportion as sixty to sixty-eight.

14. That the proprietors had no power to deduct any portion of the lands assigned to Mallett as his share from the lien which attached to them by the mortgage to the trustees ; nor have they so done.

15. Neither had Mallett any such power.   It is expressly determined by the Supreme Judicial Court of Maine, in the case of Williams College *v.* David Mallett et. al., 4 Shepley, 88, — " That the mortgagor of an undivided portion of a tract of land cannot, without the consent of the mortgagee, by any after conveyance by metes and bounds of any part of the mortgaged premises, withdraw from the lien created by the mortgage the part so conveyed."

In 1839, at the July term of the Supreme Judicial Court, the

President and Trustees of Williams College, in a suit brought on the mortgage of Samuel T. Mallett to foreclose, recovered judgment for the possession for six thousand acres of land in the town of Lee, by which name the township in which are the lands in controversy are situate.

And having assigned the mortgage to John Webber by deed (see No. 7), during the pendency of their suit against Samuel T. Mallett to foreclose the mortgage, the judgment inured to Webber, the assignee of the mortgage. Williams College v. Mallett, 4 Shepley, 84.

16. By lapse of more than three years, the fee in the six thousand acres thus recovered has become absolute in the assignees of the mortgage.

17. By judgment for partition and the proceedings thereon, which judgment and proceedings stand unreversed and in full force, the assignees of the mortgage became sole seized of the lands set off to them by the commissioners appointed by the court, whose doings were accepted and by judgment of court confirmed.

See No. 9, and by which it appears the lots in controversy were assigned to the petitioners to hold in severalty.

18. By the deeds of Webber to Foxcroft, No. 8 and No. 10, the whole fee in those lots passed to Foxcroft, the plaintiff in error.

The question at bar involves the construction of a grant by deed of real estate within the State of Maine. This deed and the construction of it have been made the special subject of judicial decision by the Supreme Judicial Court of Maine. The construction of that deed on the very question at issue has been solemnly settled by the highest judicial tribunal, and is no longer an open question.

The practice under the laws of a State furnishes a rule by which the Circuit Court sitting in that district may proceed. Brown v. Van Braam, 3 Dall. 344.

In cases depending on the statutes of a State, and more especially those respecting titles to land, the court adopts the construction of the State where that construction is settled, and can be ascertained. Polk's Lessee v. Wendal et al., 9 Cranch, 87 ; Shipp et al. v. Miller's heirs, 2 Wheat. 316 ; Elmondorf v. Taylor et al., 10 Wheat. 152.

The Supreme Court adopts the local law of real property, as ascertained by the decisions of the State courts, whether these decisions are grounded on the statutes of the State, or form a part of the unwritten law of the State which has become the fixed rule of property. Jackson ex dem. St. John v. Chew, 12 Wheat. 153 ; Society for the Propagation of the Gospel v. Wheeler, 2 Gallis. 105.

*Mr. Evans*, for the defendant in error, made the following points.

I. With regard to that part of the case prior to the mortgage given by Mallett to the College.

1. *Of fact.* That Ingersoll and Mallett had, previous to the delivery of the deed, College to Ingersoll, been engaged as proprietors in placing settlers upon the township, under the provisions of the act of 1816.

That the title of Mallett to his six thousand acres was perfected by the deed of Ingersoll to him, and by the delivery of the deed, College to Ingersoll, being parts of one transaction, both necessary to perfect the title of Mallett.

That the condition inserted in the deed to Mallett was but the giving a legal and binding effect to a previous stipulation between the parties, under which they had both been acting.

2. *Of law.* That whether the facts above supposed were true or not, Ingersoll, as proprietor, had a right to impose the condition under consideration, contained in his deed as an original condition.

That such condition must be construed and understood by a reference to the act of 1816, referred to in the resolve.

That it must be construed according to the intention and meaning of the parties.

That it could not have been performed by payment of money under the bond, or in any other way than by getting on the specified proportion of settlers, of the description contained in the act of 1816.

That the performance of it necessarily involved an appropriation of a certain portion of the land conveyed to settling purposes, and necessarily contemplated a specific appropriation of the quantity of land required, in proportion, for those purposes.

That the condition thus imposed operated as a specific charge and burden upon the land thus conveyed.

II. And with regard to the remaining part of the case, the following points, namely : —

1. That the delivery of the deed to Ingersoll, and the execution of the deeds, Ingersoll to Mallett, and Mallett to the College, being at the same time, and the two latter being witnessed and sanctioned by the agent of the College, who delivered the former, the College was thereby affected with notice of the contents of all, and is bound thereby.

2. That whether affected with actual notice or not, the reference in the deed to the College to the deed from Ingersoll to Mallett incorporates the whole of the former deed in the latter, and subjects the College to all its reservations, burdens, and conditions, so far as regards the title and description of the land conveyed.

3. That the reservations and conditions in the deed, Ingersoll to Mallett, being before the *habendum,* may all be considered as

part of the description, and are therefore, on the principles assumed by the plaintiff in error, incorporated in the deed to the College, by the reference contained therein.

4. That by this reference, Mallett, the grantor, reserves to himself, necessarily, as mortgagor, the right to discharge the burdens and obligations imposed upon the land by the deed from Ingersoll.

5. That such reservations and conditions are not repugnant to the covenants in those deeds, and no more repugnant to the covenants in a mortgage deed than in any other.

6. That the proprietors of the township had the power to divide the whole or a part of the same among those interested, and that the legality of their proceedings is admitted so far as the division is concerned, both parties claiming under it.

7. That it is not competent for the plaintiff in error to affirm the legality of the assignment to Mallett for one purpose, and deny its validity for another. If that assignment was invalid in part, it was so in the whole ; and the lands thus assigned remain common lands ; and, in consequence, the plaintiff in error could not have them specifically assigned to him in partition, and his title fails.

8. That the action of the proprietors in assigning fourteen lots to Mallett, " as so much towards his share," with the words, " being lots which he has sold to settlers," operated as a conveyance to Mallett of those lots in trust for the persons to whom he had sold, or contracted to sell them.

9. That the rights of the College were not thereby infringed, inasmuch as by that assignment the condition of the grant from Ingersoll was saved, and the title of the College secured. That Mallett, as grantee, and also as mortgagor, had not only the right, but was also under a moral obligation, to have the burden upon the six thousand acres removed. And that the assent of his cotenants, as expressed by their votes at the meeting, operated as a confirmation of his proceedings.

10. That no land has been subtracted from the operation of the mortgage, as contended by plaintiff in error, but that by purchasing and owning thirteen hundred acres in the township, besides that covered by the mortgage, Mallett had, within a fraction of one hundred acres, in fact relieved the mortgage from the burden of settling duties ; leaving in allotted and common lands six thousand acres in the township, within a fraction of a lot, untouched, and exposed to the operation of the mortgage, with all burdens discharged.

11. That whatever lien the College might have had upon the lots assigned, that lien was divested by the action of the proprietors, and these lots freed from the operation of the mortgage.

12. That neither the case Williams College *v.* Mallett, Randall *v.* Mallett, nor Webber *v.* Mallett, cited by plaintiff in error,

considers the questions at issue in this case, or gives any construction to the deeds, nor were any such questions presented in either of those cases.

13. That the assignment having been made to Mallett, for the use of the settlers, a conveyance might be enforced against him in equity, — or, if he had given deeds, the title acquired by vote of the proprietors would inure to his grantees, as settlers in the township.

14. That it is not competent for the College to avail itself of the assignment of these lots for one purpose; namely, to protect its title, and then seek to divert the assignment from those to whose use it was made, and appropriate it to its own.

15. If the plaintiff in error has any title, it is under the mortgage alone. If, therefore, the lots in question are not covered by the mortgage, he is a mere stranger, and cannot inquire as to the title of the defendant in error.

16. The proceedings in partition do not involve a consideration of the point in issue in this case, or a construction of the deeds.

17. Neither does the judgment in partition affect, in any manner, the right of property.

18. By the deed of Samuel T. Mallett to David Mallett, the fee in these lots passed to David Mallett, and his title cannot be questioned by any one, not a creditor, a purchaser for a valuable consideration, or a *cestui que trust* of the lands. And the plaintiff in error sustains neither of these relations.

Mr. Justice WOODBURY delivered the opinion of the court.

This is a writ of error, founded on an exception taken to the ruling of the Circuit Court, in the Maine District, as to the construction of a deed.

The action below was brought to recover lots No. 11 in the 4th range, and No. 11 in the 5th range, in the town of Lee, in said District; and the construction objected to was, that a mortgage, executed June 5th, 1827, by Samuel Mallett to Williams College, under which institution the plaintiff in error claims, did not comprehend or convey the demanded premises.

In order to judge of the correctness of this construction, and its bearing on the rights of the parties, it will be necessary to examine the circumstances under which the deed was made, as well as its phraseology.

The demanded premises were part of township No. 3, north of Bingham's Penobscot purchase, conveyed by the Commonwealth of Massachusetts to Williams College, the 15th of February, 1820, under certain resolves, passed by the legislature, February 19th, 1805, and January 27th, 1820. The only conditions in those resolves material to what is now under consideration were, that " the

grantees, or their assigns," shall give security that they, " within three years, will place on said township thirty families, as settlers, of the description named in the act for promoting the sale and settlement of the public lands in the District of Maine ; also reserving in said township the usual public lots." By the act referred to, for " promoting the sale and settlement of the public lands in the District of Maine," it was provided (in section sixth), " that in every township to be laid out pursuant to this act, the commissioners shall set apart fifty lots, of one hundred acres each, of average quality and value, no two lots of which shall be contiguous to each other, which shall be granted and conveyed to the first fifty settlers in said township, upon the payment of five dollars for each lot ". (Statute, February 15th, 1816, p. 172). The fifth section authorized the commissioners to take a commutation from grantees of any settling duties they were held to perform.

The resolve, granting this township, reduced the number of settlers from fifty to thirty ; and, instead of reserving the right to the commissioners to execute such deeds, provided, that the grantees might give security to the State to do it, and perform the other duties, as to the settlers, under the before-mentioned act. Accordingly, Williams College having conveyed this township to Nathaniel Ingersoll, on the 15th of February, 1820, and not having given the before-mentioned security themselves, procured him to do it, and he, by bond, dated March 17th, 1820, stipulated with the State, among other things, to place, within three years, " on said township thirty families, as settlers, of the description named in the act for promoting the sale and settlement of the public lands in the District of Maine."

Matters being thus situated, Ingersoll, on the 5th of June, 1827, conveyed to Samuel T. Mallett a portion of said township, under the following description, reservations, and conditions : —

" Six thousand acres of land, in common and undivided, in the township of land lying in the county of Penobscot, as the same township was surveyed by Alexander Greenwood, Esq., in the year one thousand eight hundred and eleven, the same being township numbered three in the second range of townships north of the Bingham Penobscot purchase, and numbered four by said Greenwood, being the same conveyed to me by the President and Trustees of Williams College, as described in their deed, dated February fifteenth, one thousand eight hundred and twenty, and this day delivered to me, reference thereto being had ; excepting and reserving the lots marked as settlers' lots on a plan of said town, made by John Webber, and excepting also the lot on which I have improved, which are not to be subjected to a draft ; subject, however, to the condition that the said Mallett shall perform his part of the settling duties in proportion to the land conveyed, and also that from said six thousand acres a part of the public lands reserved shall be

taken, in proportion as said six thousand acres bears to the whole township."

On the same day, to secure the consideration for the purchase, and to pay the same to Williams College, in behalf of said Ingersoll, still indebted to the College, Mallett conveyed the same premises, by mortgage, to the College, under the following description : —

" Six thousand acres of land, in common and undivided, in the township of land lying in the county of Penobscot, as the same township was surveyed by Alexander Greenwood, 1811, the same being township number three in the second range north of the Bingham Penobscot purchase, and numbered four by said Greenwood, being the same this day conveyed to me by Nathaniel Ingersoll, as by his deed, reference thereto being had."

What passed by this conveyance is the chief difficulty in the case. The question arises in this way.

The debt, secured by that mortgage, not being paid, the College instituted a suit to foreclose the same, in the year 1832, and recovered judgment June 20th, 1839. In the mean time, namely, May 11th, 1835, it transferred the rights under the mortgage to John Webber, who, in June of the same year, conveyed a moiety of them to Foxcroft, the plaintiff in error.

Webber and Foxcroft then, in July, 1836, petitioned the Superior Court of Maine for a partition of what they held in common with others ; and, after various proceedings, these lots, No. 11 in the 4th, and No. 11 in the 5th range, were set off to them in severalty ; and on the 4th of November, 1836, Webber released all his rights in them to Foxcroft. This, it is contended, vested the title in him, derived under the mortgage ; and it might have done so, in one view of the case, had nothing else occurred to prevent or defeat it. But Samuel Mallett, after the conveyance to him by Ingersoll, and the mortgage to the College, proceeded to put on the land various settlers, under the reservations and conditions in the deed to him ; and, at a meeting of the proprietors of the township, for the purpose of dividing the same, April 16th, 1828, No. 11 in the 4th range, and No. 11 in the 5th, were set off to Samuel Mallett, with other lots, making fourteen in all, and described as " being lots which he has sold to settlers, as so much towards his share in said lands " ; and on the 12th of August, 1829, he executed a deed of those lots to the demandant.

The case, then, stands thus. If the title to these lots passed under the mortgage from Samuel Mallett to the College, without condition, except as security for the debt, the plaintiff in error is now possessed of them in severalty, and should retain them. But if the title to them did not pass at all by that mortgage, on account of the exceptions or reservations, either in it or the prior deed, which are applicable to the premises ; or if it passed on conditions which

Foxcroft *v.* Mallett.

have since vested these lots in David Mallett, as settlers' lots under the act to encourage the sale and settlement of lands in Maine, — then he, as settler and grantee of the same, ought now of right to possess them. The general aspect of the whole case is, we think, strongly in favor of the right set up by the demandant.

On the construction made in his favor by the court below, he will recover only what the laws of the State intended such settlers as he should have ; and which it was expressly provided they should have in the deed from Ingersoll to Samuel Mallett of the tract including these premises.

But should the opposite construction, contended for by the tenant, prevail, the College and its assignees will get back, under a mortgage to secure a part of the consideration, about one fourth of the township, free from any charge or deduction on account of settlers' claims, when the College was originally entitled to it under the resolve only as burdened with that charge, and has paid nothing since to relieve the land from it ; and when the immediate grantee of the College conveyed it so burdened, and has done nothing since to remove the encumbrance. Again, it was a leading principle of public policy with the State, in order to increase its population and wealth, that settlers should be placed upon the land at an early day, and, as an inducement for them to come, should have lots for a very small consideration. The College took the original grant under stipulations to effect this, and were bound to effect it, to the number of thirty families.

Yet, on the construction set up by the tenat, Ingersoll, under his bond, and his assigns, under the clauses in their deeds from him, would be compelled to effect this so far as regards one fourth of the town, without allowing them any consideration therefor, or permitting them to make it a permanent charge on the land itself, as it originally was and would naturally continue to be.

But general considerations like these may be counteracted by express agreements and special provisions between the parties ; and it is necessary to ascertain next whether any such different and opposing agreements have been entered into here. When Ingersoll, being the second grantee and the obligor in the bond to the State for the performance of duties as to settlers, proceeded to convey about one fourth of the township to Samuel Mallett, it is clear that he preferred making the performance of the duties to settlers in that portion of the township a charge on the land itself, by a condition in the grant, as had formerly been the usage, rather than taking another bond or other collateral security for it to himself. Such a course was also likely to be the safest, and was competent or legal, if he chose to adopt it. Accordingly, at the close of the description of the premises, in his deed to Mallett, he adds, " *excepting and reserving* the lots marked," &c., which are not those now in dispute, and concludes, — " *subject*, however,

to the CONDITION, that the said Mallett shall perform his part of the settling duties in proportion to the land conveyed, and also, that from said six thousand acres a part of the public lands reserved *shall be taken,* in proportion as said six thousand acres bears to the whole township." There can be no doubt, that this language, whether following or preceding the description of the premises, was intended to constitute an integral part of the deed itself, and to limit the extent and nature of the grant. A condition or reservation may be inserted in any part of a deed. Shepherd's Touch., ch. 6 ; 5 D. & E. 526 ; 1 Saund. 60, note.

Nor is such a provision inconsistent with the general covenants, as has been contended by the plaintiff in error. They must be construed as relating only to the subject-matter, looking to the whole deed, and the obvious intent of the parties in the whole.

What, then, is the effect of these particular clauses ? Clearly to except out of and reserve from passing at all, by the grant, so much of the six thousand acres as " the lots marked as settlers' lots on a plan of said town by J. Webber," and also the lot on which Ingersoll had improved. These were not to be considered as held in common or " subjected to a draft," but were entirely excluded from any future division of the six thousand acres. These, however, are not now in controversy.

What more do these clauses provide ? The whole land, which did pass under the grant, was to be held " subject " " to the condition, that the said Mallett shall perform his part of the settling duties," or, in other words, put on his proportionate number of families, and convey to the head of each a hundred-acre lot for only five dollars, and also allow a proportionate share of the public lands reserved in said township to " be taken " from this six thousand acres. This is the important provision bearing on the present case. For aught which appears, the settlers had not then removed upon the land. The public lots reserved in the township had not then been set apart. But the parties virtually agreed, that, when settlers were put on and when the public lots were set apart, one fourth, or thereabouts, of the lands in the whole town belonging to settlers should, on the payment of a mere nominal consideration, come out of these six thousand acres, and, in like manner, one fourth of the public lots should be taken therefrom.

This being the special agreement of the parties, the next inquiry is, has it been carried into effect in a manner so as legally to sustain the judgment rendered below ?

The controverted expressions in the deed seem, in their most obvious import, either to except from the land conveyed the lots which settlers should select, or to make it a condition of the grant, that the title to those lots should afterwards be vested in them. The form of the ruling of the court leaves it a little uncer-

tain on which of these grounds the opinion rested, as, after a recital of the evidence in the case, the bill of exceptions says : —

" Upon this evidence the honorable justice, who presided at said trial, ruled that the mortgage deed offered in evidence by the defendant, given to the said Trustees of Williams College, dated the 5th day of June, 1827, marked 5, does not comprehend and cover the two lots, 11th in the 4th range, and 11th in the 5th range, being the premises demanded."

At the first blush, it might be inferred that the judge held these lots did not pass at all under the mortgage, having been considered as excepted or reserved. Mallett *v.* Foxcroft, 1 Story's R. 477. But we are inclined to think, that so stringent a view of his ruling is not indispensably necessary ; and if it were, we see no reason why the judgment is not to be sustained, as right in substance, and according to the merits of the case, — if, at the time the writ of right was brought, the title to these lots was not in the mortgagee or his grantees, but was rather in the demandant, under one of the views or constructions before mentioned.

The learned judge might well mean, that the mortgage " does not comprehend and cover the two lots " in dispute, as matters stood, after the settling, partition, and conveyance to David Mallett, and he would thus regard the provision as a condition which had been executed. This would be free from much difficulty. On the contrary, it is supposed by the plaintiff that he regarded it as an exception or reservation of the last lots. This would be, in the spirit and intent of the parties, as the former clause had been, an *excepting* or *reserving* of the first-named lots. If deciding so (1 Story, 477), he doubtless considered, that the last lots would ere long be set apart and marked, and thus become certain on the principles contained in the deed and in the statutes as to settlers and partitions by the proprietors of towns ; and he, therefore, may have felt justified in regarding now as sufficiently certain what could be afterwards made certain, *id certum est quod certum reddi potest* (Jackson *v.* Lawrence, 11 Johns. R. 191.) But, in some respects, it is not quite so natural or safe a view to regard this last clause as a reservation or exception, nor does the judge call it so in the ruling. An exception or reservation is sometimes void for uncertainty, and sometimes for being in favor of third persons. 4 East, 464 ; Thompson *v.* Gregory, 4 Johns. R. 81 ; 9 Johns. R. 73 ; Co. Litt. 143, *a.*

Those objections have been urged in this case ; and it may, therefore, be least exceptionable to regard the last clause, as it is called in the deed, a condition. Rice *v.* Osgood et al., 9 Mass. R. 43 ; Gray *v.* Blanchard, 8 Pick. 284. This view seems well sustained both by the language used and the nature of the transaction. The preceding clause is in words, *eo nomine, excepting* or *reserving*, while this is *eo nomine* on " *condition* " ; and the lots

there referred to were previously set apart, marked, and identified, while these were not so set apart, but still held in common and in some degree uncertain.   The phraseology was also changed in the last clause from " excepting and reserving " to " condition," probably because the latter expression was deemed more appropriate as to lots not then selected or identified, but which were intended and virtually agreed to be, afterwards.

Such an agreement would in its spirit, no less than words, be a condition, as it would be " a bridle " or restraint on the grant, which is one of Shepherd's definitions of a condition.  Shep. Touch., ch. 6.

· The nature of a transaction, as well as the language, may well be regarded always in deciding whether a case is a reservation or a condition.   13 Maine R. 31 ; 15 Maine R. 216 ; 4 Johns. R. 82 ; 1 D. & E. 645 ; Shep. Touch., ch. 6, p. 122 ; 12 Pick. 156.

A charge like this, imposed in a deed by the State, though using words of reservation, was adjudged to be a condition in Hovey v. Deane, 13 Maine R. 31 ; and same case, 15 ibid. 216 ; Dunlap v. Stetson, 4 Mason, 349.   So a provision may be inserted in an instrument as to land, which will be construed either a condition or a covenant, as seems most appropriate.   Bac. Abr. Condition, G.   And words of limitation may be taken for a condition.   Com. Dig. Condition, A ; 11 Mod. R. 61.

But whichever the last clause should be considered as operating, consistent with legal principles, the result on the interests of the parties would be much the same.   In the former view, as an exception or reservation, the land afterwards set apart for these lots would be regarded as never passing at all to the mortgagee or his grantees, while, in the latter view, as a condition, it would pass, but only on condition of being vested in the settlers, so soon as set apart and conveyed to them; and as the latter has already been done, the title would not be now in the tenant, under either of these views.

Were it necessary to give validity to the clause, and it would be bad either as a reservation, exception, or condition, it would be no unusual stretch of construction to consider it as a covenant to stand seized to the use of the settlers, and in this way reach a like result.   Jackson v. Swart, 20 Johns. R. 87 ; Bedel's case, 7 Coke, 40.

A deed is, if possible, to be made operative in some way ; and the construction should be liberal, in order to effect that object, and enforce the original design.   2 Wils. 75 ; Willes, 682 ; 5 Barn. & Cressw. 106 ; 2 Saund. 96, note ; Preston on Conveyancing, 41 ; Broom's Legal Maxims, 238, 239.

Making these important clauses, then, in the deed from Ingersoll, operative, and near as may be in conformity to the original design, which was both legal and laudable, why should they not bind subsequent mortgagees and grantees ?

· Samuel Mallett, having obtained no interest in the six thousand

acres, so far as regards the lots then marked and reserved, and none whatever in the whole tract, free from the condition and charge we have been describing, — of other lots to be afterwards marked and assigned, as these have been, to settlers, — how could he pass to others, by a mortgage, a greater interest than he obtained ?

That condition or charge was on the land, as an encumbrance, by the very terms of the deed to him ; and he could not, if he tried, convey a title to the land which should be free from it. Such a condition attaches to the land wherever it goes, " although the same pass through the hands of a hundred men." (Shep. Touch., ch. 6 ; Perkins, § 818 ; 2 Preston on Conveyancing, 412 ; 1 Co. Litt. 230, *b.* In our view, it operates like a covenant, which runs with the land ; and all assignees are bound by covenants real, that run with the land. Spencer's case, 5 Coke, 15 – 17 ; Co. Litt. 47, *a* ; Shep. Touch. 161, ch. 6, 176 ; Com. Dig. *Condition ;* 3 D. & E. 393 ; 1 Paige's R. 412, 455.

The condition, or charge, was also public, — on record, *in extenso,* in the deed from Ingersoll. That deed was expressly referred to in the mortgage to the College ; and the value of the whole, in Samuel Mallett's hands, or in those of his mortgagees, would be known by all to be, at that time, reduced in proportion.

By proceeding afterwards to get the partition made by the proprietors, and to execute the deed to David Mallett, so as to perform his duty in respect to this condition, he did not, as seems to be contended, reduce further the value of the land to himself or mortgagees, or part with any portion of it not before subject to be thus taken.

The extent and nature of his title being spread upon record, nobody could be misled, and nothing could pass by his mortgage, free from the same conditions and reservations under which it had come to him ; and whenever certain lots should afterwards be set apart and conveyed to settlers, — it being in conformity with the condition, — they could not and ought not longer to be held or retained under the mortgage deed. Nor is the subsequent setting apart of the premises, and the conveyance of them to settlers, a withdrawal of any part of the mortgaged security, as is argued by the plaintiff in error ; because that security embraced the six thousand acres only as subject to such an event ; and its happening was provided for, and was an open and express condition of the title to the property which was held as security.

It is likewise urged by the plaintiff in error, that Mallett might, like Ingersoll, have agreed to perform the duties towards settlers, in money. But he did not. So, without any agreement, he might have done it with money, and not left it to become an actual charge on the land, in his mortgage, though placed as a conditional charge on it by Ingersoll. But he did not. So it is said the condition here is a subsequent one, and the title vests, subject to be divested

only by a breach and an entry for condition broken, and which entry has never been made. Rice *v.* Osgood et al., 9 Mass. R. 38 ; 2 Cruise, title 13, § 15.

But it has not been broken, and hence no entry, by Ingersoll or others, is necessary for condition broken. On the contrary, the condition has been fulfilled, by a performance of the duty to the settlers, in getting their lots set apart and conveyed to them ; and thus the title to those lots is vested in them now, as the condition prescribed, rather than remaining in the grantee or mortgagee. Rice *v.* Osgood et al., 9 Mass. R. 44.

There is no difficulty, then, about a breach and an entry, as every thing has been fulfilled in the manner it ought to have been done. So, in answer to another objection, it is clear that this fulfilment was attended to as properly by the mortgagor, before a foreclosure, as by the mortgagee. 18 Mass. R. 87 ; Bradley *v.* Fuller, 23 Pick. 9 ; 2 Greenleaf, 132. The mortgagor was in charge of the land, and was still the owner, for all purposes except the security of the creditor. That security is not lessened by what he did in this respect.

Another point has been much argued in relation to the mortgage, which, in this view of the subject, is not material. It is, that the mortgage deed does not contain the condition. After describing the premises, it is true that it does not go into details as to the several exceptions, reservations, and conditions in the deed to Samuel Mallett, but merely adds, "being the same this day conveyed to me by Nath'l Ingersoll, as by his deed, reference thereto being had." This reference, it is contended, is not broad enough to include or cover the exceptions and conditions. But it could not be considered a forced construction to hold that the whole of the deed referred to should be regarded and considered as showing he intended to reconvey for security all, and no more or less, in any view, than what had just been conveyed to him. Field *v.* Huston, 21 Maine R. 69, 72 ; 22 ibid. 327 ; Foss et al. *v.* Crisp, 20 Pick. 121. The reference to the deed might as properly be considered to indicate the interests as the premises just received. In either view, the lots reserved would be reached, as they were connected not only with the title but the quantity of land meant to be conveyed. So as to any charges in the form of a condition imposed on the land, they would be embraced, even under a reference to the premises, as those charges are contained in the same sentence, and tend to show a diminished quantity of land passing absolutely.

Both deeds were also parts of one transaction, and may well be construed together, as having a like object in respect to the extent of the interests no less than the premises. But was the conclusion different, the case would, in the view first taken by us, and which is the legal view, be merely that of a grantor undertaking to sell or

mortgage a larger interest than he possessed, or an interest unencumbered, which was in fact encumbered ; and the remedy for such an excess in the conveyance is an action on the covenants, and not to construe the deed as granting more than the grantor himself possessed.

There have been some other questions raised in the argument of this case, which it is not material to consider under the only ruling at the trial which is excepted to, and which relates entirely to what passed by the mortgage.

One of them is the effect of a former recovery by Foxcroft and Webber against Mallett, in the proceedings for a partition, where the title of the latter to the lots now in controversy was questioned and tried ; but this, being a writ of right, is probably not barred by any prior recoveries between these parties. Mallett *v.* Foxcroft, 1 Story's R. 477. Another of these questions is the correctness of the partition made by the proprietors of this township, when the two lots in controversy were set off to Samuel Mallett. Such a partition, however, though the ruling on it is not excepted to in the record, is supposed to be valid under the statutes of Maine, and the usages that have long prevailed in New England among land proprietors of townships situated there. Smith's Laws of Maine, 175 ; 3 Shepley, 401 ; 12 Pick. 534 ; 3 Fairfield, 398 ; 10 Mass. R. 146 ; 3 Pick. 396 ; 12 Mass. R. 415 ; 2 Greenleaf, 213 ; 4 New Hamp. R. 99 ; 3 Vermont R. 290 ; 6 Vermont R. 208.

In conclusion, it has been urged against the judgment we have formed in favor of the right of the demandant, that several actions have been tried in Maine, where his interests have been brought in question as to the premises, and decisions had against him ; and that such local adjudications in respect to the titles to real estate should control the opinions of this court. 9 Cranch, 87 ; 2 Wheat. 316 ; 10 Wheat. 152 ; 12 Wheat. 153 ; 2 Gallis. 105. But on examining the particulars of the cases cited to govern this (3 Fairfield, 398 ; 4 Shepley, 84, 88 ; 14 Maine R. 51), it will be seen that the construction of the mortgage to the College, in respect to this reservation or condition, never appears to have been agitated. If it had been, the decision would be entitled to high respect, though it should not be regarded as conclusive on the mere construction of a deed as to matters and language belonging to the common law, and not to any local statute. 3 Sumner's R. 136, 277.

Let the judgment below be affirmed.