# . KELLY *v.* MOORE. (2)

---

WILLS, ATTESTATION OF; PRESUMPTIONS; REVERSIBLE ERROR; EVI-
DENCE; DEPOSITIONS; GENERAL INTERROGATORY; PROOF OF RECORDS
BEYOND JURISDICTION; HEARSAY EVIDENCE; APPEALABLE ORDERS;
MOTION FOR NEW TRIAL BASED ON MISCONDUCT OF A JURYMAN.

1. Where a will of real estate in this District, made in a foreign
country before the Code D. C. went into effect, which reduced
the number of witnesses necessary from three to two, contains the
usual attestation clause signed by two witnesses, and also a
certificate made the day after the execution of the will by an
American vice-consul that the testator acknowledged the paper
before him as his will and that the signature attached to it was
in the handwriting of the testator, the vice-consul is to be com-
prised among the witnesses of the will, and it is sufficiently at-
tested, the certificate being meaningless and without force of any
kind, unless it be taken as an act of attestation.
2. All legal documents and instruments of writing, deeds, wills, bonds,
and others, must, if possible, be so construed as to be given due
effect, and not receive a construction which would render them
meaningless.
3. No formal words of attestation to a will of real estate in this Dis-
trict are required, and where an attestation clause omits to state
that it was signed by the subscriber as a witness at the request
of the testator, but does state that the testator acknowledged the
paper to be his will before the subscriber, it will be presumed
that the testator requested the subscriber to sign as a witness.
4. When one of the witnesses to a will has died, proof of his signa-
ture is sufficient *prima facie* proof of attestation of the will by
him.
5. Error in submitting to the jury a question as to the due execution
of a will which should have been determined by the court, is
not reversible error, when the verdict accords with the decision
the court should have made.
6. Where, in a case involving the sanity of a testator, a witness whose
testimony in a deposition is exclusively addressed to the proof of
his father's signature as a witness of the will, until he comes to
the concluding general interrogatory, whether he can state any-

thing pertinent to the issues between the parties, answers that interrogatory by saying that the testator was perfectly sane and in good health on an occasion when he came to see witness' father about the will, an objection to the admission of the interrogatory and answer based upon a want of opportunity to cross-examine the witness, is properly overruled, in the absence of a showing of surprise or an application seasonably made to cross-examine the witness.

7. When official documents are beyond the jurisdiction of the court, it is proper to prove them and their contents by the deposition of the official having cuscody of them.

8. In a case involving the validity of a will executed in a foreign country and the mental competency of the testator, it is not error to exclude certificates of physicians for the commitment of the testator to an insane asylum there, offered in evidence by the parties attacking the will, especially when it does not appear why the testimony of the physicians might not have been taken.

9. While ordinarily an order granting or overruling a motion for a new trial is not appealable, the action of the trial court will be reviewed on appeal in some cases where the motion is based upon misconduct of the jury or those connected with it, and the trial court has refused to consider, or has erroneously considered, the application upon an uncontested state of facts.

10. Where, however, a motion for a new trial based upon the alleged intoxication of a juryman during the trial, is contested and the trial court after a full consideration of affidavits and counter affidavits and a searching oral investigation, finds as matter of fact that the charge is not sustained and overrules the motion, a judgment on the verdict will not be disturbed on appeal.

243. Submitted April 23, 1903. Decided May 6, 1903.

HEARING on an appeal from a judgment of the Supreme Court of the District of Columbia, upon a verdict, in an action of ejectment.               *Affirmed.*

The COURT in the opinion stated the case as follows:

This is a suit in ejectment to determine the title to a piece of real estate in the city of Washington, known as lot numbered 23, in Davidson's subdivision of lots in square numbered 166, which in the year 1887 and prior thereto was the

property of one William Thomson. The appellants, who were the plaintiffs in the court·below, represent a number of the heirs-at-law of William Thomson, and the appellees, Mary Cecelia Thomson and Georgiana Hawkes Thomson, who were defendants in the court below, are in possession of the property as devisees under a will executed by William Thomson. The other appellees are merely their agents, and have no substantial interest in the property. The question in controversy is that of the validity of the will of William Thomson.

William Thomson appears to have been a resident of this ·city, when some time prior to the year 1885 he was appointed ·consul for the United States at Southampton, in England. He had as vice-consul at the same place one John H. Cook-·sey, a merchant of Southampton. On December 15, 1885, William Thomson was committed to a private insane asylum in England as a lunatic upon the certificates of two physicians .and the request of a cousin, one James E. Cunningham, ·a merchant of London, who seems to have taken temporary ·charge of his affairs. He remained in the asylum until February 1, 1886, for a period of a month and a half, when he ·was discharged as probably cured, or rather, as the expres-·sion was used, was granted leave of absence on probation. The probation seems to have proved satisfactory, for he never returned to the institution, and there was a formal discharge ·entered on the records of the asylum on June 26, 1886.

On February 24, 1886, which was a little upwards of ·three weeks after his discharge from the insane asylum on :probation, William Thomson, at the office of Walter R. Lomer, a solicitor resident in Southampton, executed a will which he had caused to be prepared for him by Lomer, and whereby, among other devises and bequests, he devised the property here in controversy to the appellees, Mary Cecelia Thomson and Georgiana Hawkes Thomson, spinsters, of the ·county of Kent, in England, jointly for their joint lives, and to the survivor of them, with remainder to Mary Cunning-.ham Roberts, of London, for life, and remainder in fee to

her only son, then about ten years of age. The will, according to its own recital, was contained in two sheets of paper, to each sheet of which the testator signed his name; and it is testified also to have been executed in duplicate. Attached to the will was the usual attestation clause for witnesses, and this attestation clause was signed by Walter R. Lomer, who had prepared the will, and by Richard Roupe Linthorne, at the time a clerk in his office, both of whom attached their signatures in the presence of the testator and at his request.

The testator, it seems, owned real estate both in England and in America, some in New York and some in this District, besides a large amount of personal property, and the attestation mentioned was sufficient to make the will effective for the conveyance of real estate in England under the existing law of that country, as also for the conveyance of real estate in the State of New York.

On the day after this execution and attestation of the will, William Thomson again went to the office of the solicitor, Walter R. Lomer, to have a certificate written upon the will, which was to be signed by John H. Cooksey, the vice-consul of the United States at Southampton. Lomer wrote, or caused to be written, the desired certificate upon each copy of the will, and delivered back the duplicates to Thomson, who thereupon went before the vice-consul, and the vice-consul executed the certificate. The certificate was written on the second and last page of the will, and it is said "in the margin" of it; but whether this means along side of any other writing, or at the end of the will, does not very clearly appear from the record. This certificate, upon the efficacy of which really depends the controversy between the parties, was in the following terms:

"I hereby certify that William Thomson, consul at Southampton for the United States of America, attended before me on this 25th day of February, 1886, and acknowledged the foregoing paper-writing contained in two sheets of paper as his last will and testament, and that the signature William

Thomson at the foot thereof is in the proper handwriting of the said William Thomson."

(Signed)        " JOHN H. COOKSEY,

" Vice-Consul of the

" United States of America."

William Thomson died in the next year (1887), and apparently in January of that year, and apparently also while yet in the performance of his duties as consul, although this does not definitely appear from the record before us.    On January 25, 1887, the will already referred to was admitted to probate in the Principal Registry of the Probate, Divorce, and Admiralty Division of the High Court of Justice in England.    One of the duplicate copies is stated upon information and belief to have been sent " to the Probate Court at New York, United States of America," but it is not further traced; nor does it appear whether it was there admitted to probate and record.    The duplicate original admitted to probate in England is the document which figures in this case, together with a duly-certified copy thereof which has been offered in evidence in the proceedings, and a transcript and photographic copy of the certificate signed by Cooksey.

William Thomson left no children or descendants, and was never married; nor had he any brothers or sisters, or descendants of such.    His nearest living relatives at the time of his death were some first cousins, the children of an uncle, David Thomson, and of an aunt, Ann Haig.    He himself was born in the United States and always remained a citizen thereof.    The children of his uncle, David Thomson, who lived and died in Great Britain, are the two appellees, Mary C. Thomson and Georgiana Hawkes Thomson, who are themselves aliens.    Ann Haig, the aunt of the testator, was a citizen of the United States, and left numerous descendants who are enumerated in the record, but whom it is not necessary here to mention.    They claim, as the heirs-at-law of William Thomson, to be entitled to the property in dispute.    A

number of them, representing an ownership of ninety-one one-hundredths part of the property, have united in a deed of conveyance to the two appellants, bearing date on March 22, 1899, whereby, for a nominal consideration, they purport to convey one undivided fourth part of the property to the appellant, Richard K. Paynter, in his own right and for his own use, and the remaining undivided three-fourths part to the appellant, Andrew C. Kelly, in trust to recover the property for them, to sell the same, and to divide the proceeds of sale among the grantors. It is conceded that the appellants, plaintiffs in the court below, have acquired and hold the title of all the descendants of Ann Haig to the property involved in this suit, excepting nine one-hundredths part thereof.

After the execution of the deed to them of March 22, 1899, the appellants Keeley and Paynter instituted suit in ejectment in the Supreme Court of the District of Columbia on September 7, 1899, first against the appellees Joseph H. Moore, Edward J. Stellwagen, and Thomas M. Gale, the two latter doing business under the firm name of Thomas J. Fisher & Co. It seems that Joseph H. Moore was a tenant in possession of the property, and the firm of Thomas J. Fisher & Co. merely the agents of Mary Cecelia Thomson and Georgiana Hawkes Thomson for the renting of it. Afterwards the two appellees last named were admitted on motion as the defendants to the suit.

At the trial it was agreed, as already stated, that the plaintiffs held the title of all the descendants of Ann Haig to the property involved in the suit, excepting nine one-hundredths undivided part thereof; and that the defendants were in possession of the property under an alleged will of William Thomson. Upon this the plaintiffs rested in their case in chief.

The defendants thereupon proceeded to prove the will of William Thomson. The original, probated in London and retained in the registry of the court there, was not available to be produced upon this trial; and recourse was had to secondary proof of its execution and contents. Two of

the witnesses, Lomer and Linthorne, were yet living, and their testimony was taken by deposition. It is sufficient to say, in regard to this testimony, that the witnesses testified fully and unequivocally to the due execution of the will in their presence and their attestation of it, and to the mental capacity of William Thomson at the time to make it. Lomer and Linthorne also testified to the writing of the added certificate in their office. John H. Cooksey, the vice-consul, had died in 1895; but his son, who was examined as a witness by deposition, testified to the genuineness of his father's signature attached to the certificate. He also testified that he knew William Thomson well; and that in February of 1886, when Thomson came to see his father about the will, he was perfectly sane and in good health.

The contents of the certificate attached to the will were stated by one of the registers of the probate office who had the custody of it, and were set forth in his deposition verbatim from the original paper. A photographic copy of it was also proved by him and others, and was admitted in evidence, although objected to by the plaintiffs. This same witness also testified to the correctness of a certified copy of the will and which was annexed to the interrogatories propounded to him, marked as " J. D. V. 2," and he stated that he had compared it with the original will, and that it was correct, word for word, and in every particular. And this paper also was admitted and read in evidence over the objection of the plaintiffs. An identically similar copy was subsequently introduced in evidence by the plaintiffs themselves in rebuttal. This was substantially the case made for themselves by the defendants.

The plaintiffs, in their cross-examination of the witnesses for the defense, and in their own testimony in rebuttal, attacked the validity of the will on three several grounds: (1) That its attestation was insufficient to give it efficacy for the conveyance of real estate in the District of Columbia; (2) that William Thomson was of unsound mind at the time of its execution; (3) that its execution had been procured by the exercise of undue influence upon the testator by James

E. Cunningham, one of the four persons named in the will to be the executors, and others. There is no testimony, how-ever, in the record of any such undue influence; there is testimony in regard to unsoundness of mind on the part of the testator; but there is no testimony in rebuttal in regard to the matter of attestation further than was already developed in the course of the testimony for the defendants.

At the conclusion of the testimony, the defendants requested six several instructions to the jury, which were granted over the objections of the plaintiffs. By the plaintiffs eight instructions were requested,— of which two, the sixth and eighth in the series, were rejected; two, the third and fifth, were given with modifications, and the others were given as requested. Exceptions to the instructions were reserved on both sides. Then the court charged the jury of its own motion. The charge took the instructions which were allowed as a text, and merely gave them with some comments. There was no exception by either side to the charge.

The jury returned a verdict for the defendants.

Thereupon there was a motion for a new trial filed, supported by affidavits and antagonized by counter affidavits, in which sensational charges were made of alleged misconduct on the part of some members of the jury and other persons connected with the case. Thereupon the members of the jury and others were summoned into court, and examined and cross-examined orally; and as a result of the investigation the court declined to disturb the verdict or to award a new trial. To this ruling the plaintiffs excepted.

Judgment was then entered upon the verdict for the defendants, and the plaintiffs appealed to this court.

*Mr. Hugh T. Taggart, Mr. C. C. Cole* and *Mr. Leo Simmons* for the appellants:

1. The admission in evidence over plaintiffs' objection of the answer of the witness Cooksey to the last interrogatory (which was general in its nature) propounded to him under the commission, was error. A nonexpert witness can give

admissible evidence as to the sanity of another only when it is based on pregnant circumstances of which the witness has knowledge and as to which he has testified. The witness Cooksey failed to so qualify himself. *Moore* v. *Sanford,* 2 Kan. App. 250; *Welch* v. *Sipe,* 95 Ga. 765, 766, citing 111 U. S. 612 and 95 U. S. 232. Whether what the witness said be treated as an opinion, or merely as the semblance of one, it was calculated to influence the jury to the prejudice of plaintiffs, and should have been excluded for this reason. It should appear beyond doubt that error in admitting incompetent or immaterial evidence did not and could not have prejudiced the right of the party objecting. *Boston & Albany R.R.* v. *O'Reilly,* 158 U. S. 334. The answer should have been excluded for another reason. The specific interrogatories propounded to the witness relate solely to the matter of proving his father's death, and that the signature to the official certificate on the margin of the alleged will was that of his father; they gave no intimation of any answer by the witness, or of any intention to elicit evidence from him, bearing upon the matter of testator's insanity. See *Chinn* v. *Taylor,* 64 Tex. 386, 387; *Stepp* v. *Nat. Association,* 37 S. C. 419; *Smith* v. *Ellison,* 6 Colo. App. 207.

2. Under the law of the District at the time of the execution of the will (1886) and of the death of the testator (in 1887), the fact of probate and record in England was immaterial. Even if a duly certified copy of such probate had been offered in evidence, and it had shown an instrument executed apparently so as to pass land in the District of Columbia, such certified copy would have been inadmissible in evidence. *Robinson* v. *Pickrell,* 109 U. S. 608. This position is not affected by the act of Congress of July 9, 1898 (25 Stat. 246). *Campbell* v. *Porter,* 162 U. S. 478. The suit in the case at bar was instituted in 1899 and is not affected by the code. For all purposes of the case the alleged will, with its attestation, constitutes a mere private writing, and is to be dealt with as such. The instrument itself should have been produced and its execution proved by the subscribing witnesses. If not produced, there should

have been a satisfactory showing of inability to produce it before parol evidence of its contents, in whole or in part, could properly be admitted. The proceedings of foreign depositories or judicatories with respect to it were immaterial, and such proceedings were not competent evidence. *Robinson* v. *Pickrell,* 109 U. S. 608, 612; *Smith* v. *Carrington,* 4 Cr. 70; *Clifton* v. *United States,* 4 How. 242. If the law of England interposed an impediment to the production of the original will the fact should have been proved. *Hanley* v. *Donoghue,* 116 U. S. 1, 4.

3. The original will only was competent if it could be produced; the paper admitted was not a sworn copy, which would have been admissible upon satisfactory proof of the existence of the original and duplicate, and that such original and duplicate could not be produced. The paper so admitted did not of itself alone prove the existence of such original will, or that it was a copy of such original, and the certificate of the register, a mere volunteer statement, was not evidence of either fact. The giving of this paper in evidence is the only attempt made by the defendants to prove the contents of a will of said Thomson, and the paper so admitted is not referred to, connected with, or identified by any other testimony adduced on the part of the defendants, and was, therefore, inadmissible. 1 Thompson on Trials, Sec. 825. It follows that even if the execution and existence of a will by said Thomson had been established by the defendants, there must be a new trial because there is no proof of its contents. As to the necessity of either producing the original will or of accounting for its nonproduction as a foundation for secondary evidence of its contents, see 1 Whart. Ev., Sec. 60; *Riggs* v. *Taylor,* 9 Whart. 483; *Simpson* v. *Dall,* 70 U. S. 460; *Wood* v. *Cullen Co.,* 13 Minn. 396; *Owen* v. *Hull,* 9 Pet. 607; *Weathered* v. *Baskerville,* 11 How. 357. And as to the like necessity for the production also of the duplicate will, or of accounting for its nonproduction as a foundation for secondary evidence of its contents, see 1 Whart. Ev., Sec. 74; *Crossman* v. *Crossman,* 95 N. Y. 149; 1

Taylor Ev., p. 366; 29 Am. & Eng. Encyc. of Law, 292, and authorities there cited.

4. Even if the paper so permitted to be read in evidence had been duly proved as a copy of the last will and testament of William Thomson, it was not attested by three witnesses, and was therefore insufficient to pass real estate in the District. It is obvious from the face of the paper that as executed on February 24, 1886, there were but two subscribing witnesses to it, viz.: Lomer and Linthorne. The attestation clause subscribed by them is full, formal, and complete, and contemplated only two subscribers, as is conclusively shown by the word " both " appearing in it. It is also evident from the fact that Lomer, who prepared the will, was an English lawyer, and from the fact that but two witnesses were required by the law of England (both to be present and to sign at the time of execution) to a valid will of personal or real estate. That more than two were not contemplated is further conclusively shown by the testimony of said Lomer and Linthorne. It was the procurement of an official certificate, the doing of an official act, only supposed to be desirable in connection with the will, which was contemplated by Thomson, and by Lomer, who prepared the will, and not the procuring of an additional subscribing witness thereto, but intended by them as a separate and distinct act wholly independent of the attestation. This is still further evident from the form of certificate which was written on the margin by Lomer, who also wrote the attestation clause, and which, if intended as an attestation, would have been prepared in the full and complete form of the attestation of himself and Linthorne; and from the fact that it was executed by Cooksey in his official character and that to it he appended the seal of the consulate. As it was not therefore in the contemplation of either the testator or of Cooksey that such act of the latter was to be that of a subscribing witness, the *animus attestandi* was lacking, and there was in the case no evidence from which a presumption to the contrary could be drawn; the evidence was, as has been shown, to another and different intent. The cer-

tificate was apparently admitted by the court upon proof of
Cooksey's signature, that from its mere presence in the mar-
gin of the will the jury might indulge the presumption that
he signed as a subscribing witness; but this presumption was
conclusively rebutted, as has been shown by the nature of the
certificate itself and by the other proof in that regard ad-
duced by defendants. Under such circumstances, and in the
utter absence of any proof tending to show directly or by
inference that the act was done in the character of a subscrib-
ing witness, the certificate should have been excluded. *Clarke*
v. *Turton,* 11 Ves. Jr. 240.

5. Giving to Cooksey's act the import of that of a subscrib-
ing witness to the will necessitates an indulgence in two in-
ferences: First. That he was such witness. Second. That
he did what the law required of such a witness, namely, that
he signed the certificate in the presence of Thomson, which
would not be required of him in making an official certificate.

The evidence discloses no fact upon which these inferences
could be based. A presumption as defined in works on evi-
dence is an inference as to the existence of a fact, not actually
known, arising from its usual connection with another which
is known, and it must be based upon a fact and not upon an
inference, or upon another presumption. *Fresh* v. *Gilson
et al.,* 16 Pet. (U. S.) 327; Stark. Ev. 80; *United States* v.
*Ross,* 92 U. S. 281. The court below having thus improperly
left the matter to the jury of drawing such presumption from
the mere fact of Cooksey's name so appearing, the jury were
left to draw a further presumption upon this one, namely,
that the signature of Cooksey was appended in the presence
of the testator. Upon the subject, generally, of the requisites
to the valid execution of a will and presumptions in that con-
nection, see *Chase* v. *Kittredge,* 11 Allen, 49; *Penel's Lessee*
v. *Weyant,* 2 Harr. (Del.) 506; Schouler on Wills, Sec. 348;
p. 384; Jarman on Wills, Sec. 86; *Boone* v. *Lewis,* 103 N. C.
40; *Peake* v. *Jenkins,* 80 Va. 293; *Monday* v. *Monday,* 15 N.
J. Eq. 293; *Hollenbeck* v. *Fleming,* 6 Hill, 304; *Goods of
Sherman,* 1 P. & D. 662; *Goods of Wilson,* 1 P. &. D. 269;

*Dunn* v. *Dunn*, 1 P. & D. 277; *Leroy*, 3 Bradf. (N. Y.) 227; *Goods of Eynon*, L. R. 3 P. & D. 92; *Hindmarsh* v. *Carleton*, 8 H. L. Cas. 160; *Patterson* v. *Ransome*, 55 Ind. 402; *McDonald* v. *Needham*, 61 Tex. 264; *Chaffery* v. *Baptist Mission*, 10 Paige, 91.

6. The certificates of the physicians were not volunteer statements, but were made under the compulsion of the statute. The proceedings did not become less part of the *res gestæ* because required by the statute; the fact that they were required by the statute more emphatically made them so. The case of *Ormsby* v. *Webb*, 134 U. S. 65, by which the court below was influenced, deals with a different situation, and has no bearing upon the question. See *Davis* v. *Calvert*, 5 Gill & J. 269; *Thaln* v. *Bankshead*, 99 Mass. 112; *Atkins* v. *Sanger*, 1 Pick. 192; *Davis* v. *Mason*, 109 Mass. 169.

7. While undoubtedly the rule is that the question of granting or refusing a new trial is largely within the discretion of the trial court, yet this discretion is a *legal* one and is reviewable where it is exercised contrary to law or where it is wrongfully abused. *Pittsburg RR. Co.* v. *Porter*, 32 Ohio St. 328–332; *Commonwealth* v. *Roby*, 12 Pick. 496–512, and cases cited. There is no doubt that this court has jurisdiction to pass upon the question under section 226 of the District of Columbia Code. In *Raub* v. *Carpenter*, 21 App. D. C. —, lately decided and involving the question of a motion for new trial on the ground of disqualification of a juror, though filed out of time, the United States Supreme Court went fully into the question, and we fail to find a case where the courts have held that it was not proper to do so on a question of the character now raised.

A verdict rendered under the circumstances surrounding the rendition of the verdict in this case should not be allowed to stand. *Perry* v. *Bailey*, 12 Kan. 418; *Mattox* v. *United States*, 146 U. S. 148, 149; *Flesher* v. *Hale*, 22 W. Va. .
See also *Brown* v. *State*, 137 Ind. 240; *Platt* v. *Threadgill*, 80 Fed. Rep. 192; *Johnson* v. *Hobart*, 45 Fed. Rep. 542; 2

Thompson on Trials, Sec. 2585; *Cheek* v. *State,* 35 Ind. 491, 495; *Farr* v. *State,* 2 Ohio St. 54.

Mr. *Wilton J. Lambert* and Mr. *D. W. Baker* for the appellees.

Mr Justice Morris delivered the opinion of the Court:

1. Twenty-two exceptions were noted by the plaintiffs to the rulings of the trial court, some of them reserved to the action of the court in the admission and exclusion of testimony, and some addressed to the action of the court in respect of the instructions granted or refused; and upon these twenty-two exceptions they base twenty-three assignments of error. Most of these we deem it unnecessary to consider in detail or at any length. We think that there is only one substantial question in the case for our consideration, and that is the question of the sufficiency in law of the attestation of the will of William Thomson as a conveyance of real estate in this District.

In the year 1886 when this will was executed and thereafter until the adoption of the present code, which went into effect from and after January 1, 1902, at least three witnesses were required for the attestation of a will in order to render it effectual as a conveyance of real estate. The attestation here consists of that of two witnesses, which is conceded to be regular and sufficient, and of a certificate signed by a third person, the efficacy of which is controverted. The determination, therefore, of the question and of the controversy in this case depends upon the view to be taken of this certificate as an act of attestation. We think that the question is solved for us by the doctrine stated by the Supreme Court of the United States in the case of *Adams* v. *Norris,* 23 How. 353, That case, it is true, arose in California under the Mexican or Mexican-Spanish adaptation of the Roman civil law then in force in that part of our Union, but the rule laid down by the court is of general application.

In the case of *Adams* v. *Norris* there appeared a will, which immediately after the signature of the testator had the following words:

"Before me, in the absence of the two alcaldes.— Roberts T. Ridley, Sindico. Witnesses: Nathan Spear, Guillermo Hinckley."

There was question whether, under the law and usage of the country, a will, in order to be effective, required three or only two witnesses. It was treated in both aspects, both by the trial court and by the Supreme Court of the United States. With reference to the possible requirement of three witnesses the latter tribunal said:

"We comprise among the witnesses to the will Ridley, the sindico. It does not appear that a sindico was charged with any function in the preparation or execution of testaments by the law or custom of California. Nor is it clear that the sindico in the present instance expected to give any sanction to the instrument by his official character. He attests the execution of the will, and we cannot perceive why the description of himself, which he affixes to his signature, should detract from the efficacy of that attestation."

The action of Sir William Grant, master of the rolls, in the case of *Clarke* v. *Turton,* 11 Vesey, Jr., 240, which is cited by the plaintiffs in support of their contention, but which in our opinion does not sustain it, is entirely consistent with the ruling of the Supreme Court in the case of *Adams* v. *Norris,* and is indicative of the distinction that should be taken in all such cases. The case of *Clarke* v. *Turton* was a suit in equity to establish a will, to which one of the signatures of the three witnesses who were claimed to have attested it was, as in the present case, that of a vice-consul resident in some foreign country where the will appears to have been executed. There was objection to the establishment of the will on several grounds. One of these, as stated in the exceedingly brief report which we have of the case, is thus stated:

"Another objection was taken to the execution of the will — that the third signature was that of the vice-consul, the

will being executed abroad, and the attestation of some such public officer is considered necessary to the validity of the act;— that the attestation in this instance was a memorandum by the vice-consul to operate as a certificate, a separate act in his official character, and sealed with his official seal; and therefore it could not be said he subscribed as a witness."

It is stated that the master of the rolls sent the case to be tried at common law upon this objection; but we are not advised by the report what the result was, or what ultimate disposition was made of the case. Nor did the master of the rolls himself express any opinion as to the merits of the objection. But the distinction pointed out is, that when the certificate of an official person as such is attached to a will, and such official certificate is required by the law, it is not to be regarded as of itself an act of attestation. But neither by our law nor by the law of England is a vice-consul charged with any function in regard to the execution of wills. He is, it is true, charged with the authority to take acknowledgments of deeds; and it may have been that in this case he was called upon to certify to the will through some mistaken idea that his functions also comprised the taking of acknowledgments of wills. But his official act can add nothing to the efficacy of a will; nor does the absence of an official certificate detract in any manner from its validity. The certificate here in question is utterly meaningless and utterly without force or significance of any kind, unless it be taken as an act of attestation. And yet that it was intended by the parties to it that it should have some force and effect is beyond all doubt.

It is the well-established rule of law that all legal documents and instruments of writing, deeds, wills, bonds, and all others, must, if possible, be so construed as that they shall be given due effect, and not receive a construction which would render them meaningless. *Foxcraft* v. *Mallett,* 4 How. 353; *Smith* v. *Bell,* 6 Pet. 68; 17 Amer. and English Encyclopædia of Law, 2d edition, p. 18, and cases there cited. The certificate of John H. Cooksey in the present case is valueless for any other purpose than as an act of attestation.

If it is to receive any efficacy whatever, it must be as an act of attestation. And we see no reason on the face of it why it should not receive that construction. In express terms, as far as it goes, it purports to be an act of attestation, and nothing else. It purports to recite that the testator, William Thomson, attended before the subscriber on a certain specified day, and acknowledged the document, to which the then unexecuted certificate was affixed, to be his last will and testament, and the signature thereto to be in his handwriting. These are elements of an act of attestation. The certificate is plainly the equivalent of a statement that the testator in the presence of the subscriber declared that the instrument was his last will and testament. The only element of an attestation wanting is that it is not stated to have been signed by the subscriber as a witness at the request of the testator. But if no formal words of attestation are required at all, as they are not under our law, certainly an imperfect certificate of attestation cannot vitiate the whole transaction. Rather will the omission be supplied by reasonable presumption; and it may well be presumed here that Thomson came to Cooksey to get him to sign what he actually did sign.

It is the well-settled law that when any of the witnesses to a will has died, proof of his signature is sufficient *prima facie* proof of attestation of the will by him. *Robertson* v. *Pickrell,* 109 U. S. 608; *McCormick* v. *Sullivant,* 10 Wheat. 192; *Darby* v. *Mayer,* 10 Wheat. 465. Otherwise there could in most cases be no probate of wills where one or more of the witnesses had died; and especially would such probate be difficult or impossible where all the witnesses had departed this life. In the present instance Cooksey appended his signature apart from the other witnesses, and with or without the certificate it would have been impossible to prove his attestation of the will otherwise than by proof of his signature and the presumptions which naturally arise therefrom. Now, if such proof and presumptions would supply all the elements of an attestation, it is difficult to see why they would not supply the defects of an imperfect clause of

attéstation. Nor, in view of the case of *Adams* v. *Norris,* heretofore cited, is it apparent how the addition to his signature of an unnecessary designation, such as that of vice-consul was in this case, could have detracted from the legal efficacy of his act any more than a statement of his place of residence.

It is to be noted that it was left to the jury in this case to consider all the circumstances and to find what was the fact. It was left open to them to disregard the presumptions if they found any facts in the case to rebut them. This was more favorable to the plaintiffs than they were entitled to have it in view of the condition of the testimony; but they at least had no reason to complain of the submission of the matter to the jury. The jury found the presumptions and the facts against them, and we think that they found rightly.

We conclude, therefore, that the will of William Thomson, with the certificate appended thereto of John H. Cooksey, was sufficiently executed for the conveyance of real estate in this District, and that both the will and the certificate were properly admitted in evidence in this case.

2. As we have intimated, it would subserve no good purpose, and we do not deem it necessary to enter into any elaborate consideration of the other assignments of error or of the exceptions upon which they are founded. They raise no questions of law that have not been fully settled by the authorities.

For example, to the general interrogatory appended at the conclusion of the commission sent to take the testimony of Septimius Cooksey, son of John H. Cooksey, in England, and which is the usual interrogatory in all such cases, whether the witness could state anything else pertinent to the issues between the parties, the witness, whose previous testimony had been addressed exclusively to the proof of his father's signature to the certificate annexed to the will, here said that he recollected the occasion when William Thomson came to see his father about his will, and that at that time, as far as the witness could judge, Thomson was perfectly sane and in good health. Exception was taken to the

admission of this interrogatory and answer; but plainly the question was proper and the answer was relevant to the. issue. The plaintiffs do not claim to have been surprised by either, but only to have had no opportunity for cross-examination. But no doubt the opportunity would have been afforded if application therefor had been duly made.

Similar interrogatories were propounded to the register of the probate court in London, who had the official custody of the will of William Thomson among other wills, and he was requested to state whether it was on file in his office, whether it had been admitted to probate, whether the Cooksey certificate appeared on it, what the contents were of this certificate, and whether a certified copy of the will which was attached to the interrogatories was a correct copy of it. To the allowance of each and all of the questions and of the answers of the witness to them exception was reserved by the plaintiffs, and these exceptions have been brought here by assignments of error thereon. But it is well settled that this is a proper mode for the proof of documents and their contents when the documents themselves are beyond the jurisdiction of the court.

In the testimony of the plaintiffs in rebuttal it was sought to introduce testimony plainly of a hearsay character, including the certificates of the physicians for the commitment of William Thomson to the insane asylum; but insanity is not to be proved in this way, and these certificates were clearly inadmissible, especially in view of the fact that it does not appear why the testimony of the physicians themselves might not have been taken. So also declarations made to some of the witnesses by third parties were also excluded. And this, of course, was evidently proper. Neither in the matter of the exclusion or admission of testimony, nor in the matter of the instructions which were given or rejected, or given with a modification, do we find any reversible error. The rulings of the court were eminently right and just throughout the whole trial.

3. Of one exception, perhaps, special consideration is demanded. It is an exception to which usually no consider-

ation whatever can be given in an appellate tribunal,— that which was taken to the refusal of the trial court to grant a new trial in the case.

Besides the usual formal reasons, the motion for a new trial here was founded upon serious charges of misconduct on the part of one or more of the jurors during the trial and principally in the consultation room after they had retired to deliberate on their verdict. The principal charge was that one of the members of the jury was during all this time under the influence of intoxicating liquor and thereby incapacitated from rational deliberation; and this charge developed counter charges of subornation of perjury on the part of persons other than members of the jury. ·Numerous affidavits were filed in connection with the matter; and the court authorized and permitted an oral examination of several of the jurors and of some other persons more or less connected with the case. To the proceedings in connection with the motion an unusually large portion of the record before us is devoted. They occupy 56 out of 129 printed pages, or nearly one-half of the whole record. The result of the investigation, in the language of the bill of exceptions, was that " the court held that, while there appeared to be a conflict of evidence as to irregularity in the jury room, still there was not sufficient to warrant him to disturb the verdict, as there was no evidence of any misconduct on the part of one or more of the jurymen that would warrant a setting aside of the verdict, and that it also appeared that such misconduct or impropriety did not enter into or affect the verdict, and that the verdict appeared to be sustained by the evidence."

To this ruling the plaintiffs excepted, and the exception is now urged upon our consideration.

· In view of the gravity of the charges advanced, and in view of the fact that such misconduct as has been here asserted tends to pollute and poison the fountains of justice, which should be rigidly guarded from such contamination, we have carefully considered the proceedings as detailed in the record, but we find no reason to dissent from the ruling of the learned

justice who presided at the trial. The alleged misconduct after all is a contested question of fact. The justice of the trial court, after apparently careful, painstaking, and conscientious investigation, has found the charge not proved, and it is not apparent that in such a case an appellate tribunal should interfere with the finding.

It seems to be established by the decisions of the Supreme Court of the United States and other tribunals that, while ordinarily the allowance or refusal of a new trial rests in the sound discretion of the court to which the application is addressed — that is, the trial court — and the result cannot be made the subject of review by writ of error (*Newcomb* v. *Wood,* 97 U. S. 581; *Henderson* v. *Moore,* 5 Cranch, 11), yet there are or may be exceptions to the rule, and among these exceptions are some cases of misconduct on the part of the jury and others connected with the jury which the trial court has refused to consider or has erroneously considered upon an uncontested state of facts. *Clyde Mattox* v. *United States,* 146 U. S. 140; *United States* v. *Reid,* 12 How. 361; *Perry* v. *Bailey,* 12 Kans. 415; *Woodward* v. *Leavitt,* 107 Mass. 453.

In the case of *Mattox* v. *United States,* the Supreme Court of the United States by Mr. Chief Justice Fuller, after stating the general rule, said:

" But in the case at bar the the District court excluded the affidavits, and in passing upon the motion did not exercise any discretion in respect of the matters stated therein. Due exception was taken and the question of admissibility thereby preserved.   *   *   *   We should, therefore, be compelled to reverse the judgment because the affidavits were not received and considered by the court."

In the case of *Perry* v. *Bailey,* 12 Kans. 415, in which the judgment and opinion of the Supreme Court of Kansas were delivered by Mr. Chief Justice Brewer, now one of the justices of the Supreme Court of the United States, and which is cited with approval by the latter court in the case of *Mattox* v. *United States,* it was proved and practically

conceded in the trial court, for there was no countervailing testimony, that one of the jurors was under the influence of liquor in the jury room and thereby incapacitated from participating intelligently in the deliberations of his associates on the jury, and yet the trial court refused to set aside the verdict. This was assigned as error, and the Supreme Court of Kansas on this ground reversed the judgment and directed a new trial. And it was held that such action was necessary in order to preserve the administration of justice from the fatal taint of corruption at a most vital point.

The present case is easily distinguishable from those which have just been cited. Here not only were all the affidavits that were offered received and considered, but a lengthy and searching oral investigation was had before the court of the alleged acts of misconduct on the part of members of the jury. The trial court, therefore, differently from the case of *Mattox* v. *United States,* gave full and conscientious consideration to the alleged acts of misconduct and found that they were not sustained by the testimony. So, also, is there a sharp distinction between this case and that of *Perry* v. *Bailey.* For, although the principal alleged act of misconduct here on the part of a member of the jury was identical with that in the case of *Perry* v. *Bailey,* that is, gross intoxication, yet there the fact of intoxication was proved and admitted and the court refused to take proper action on it, while here the charge after full investigation has not been sustained. If the testimony failed to sustain the charge — and of that the trial court was the best judge — it is difficult to see how that court could properly have done otherwise than deny the motion for a new trial, so far as the matter of misconduct of the jury was concerned.

We are of opinion that there was no reversible error in the rulings of the trial court in this case, and therefore that the judgment appealed from should be *affirmed, with costs. And it is so ordered.*

A writ of error to the Supreme Court of the United States was prayed by the appellants and allowed May 12, 1903.